1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALFRED T. SAPSE and RALPH M. CONTI,
M.D.,

      Defendants.

2:10-cr-00370-KJD-RJJ

**ORDER**

United States' Motion to Obtain Video-
Conference Testimony from Witnesses

This matter is before the Court on the United States' Motion to Obtain Video-Conference
Testimony from Witnesses (#94).  The Court also considered Dr. Ralph M. Conti's Opposition
(#97), Alfred Sapse's Opposition (#100), the United State's Reply to Conti's Opposition (#103),
and the United State's Reply to Alfred Sapse's Opposition (#103).

**BACKGROUND**

This is a case about an alleged fraud.  The Indictment alleges that Defendant Alfred T.
Sapse obtained money from patients and investors by claiming to have developed a novel
medical procedure involving stem cells that would cure or ameliorate severe, incurable diseases
such as multiple sclerosis, cerebral palsy, and retinitis pigmentosa. The procedure involved
implanting stem cells or stem cell-like cells into the patient's abdomen.  The implantation was
performed by Defendant Ralph M. Conti, M.D.

The procedure did not have FDA approval nor did it have the desired effect.  The FDA
sent a letter warning of the impropriety of performing the procedure without proper agency
approval.  At that time Sapse moved his operation to Mexico.

With the trial in this case approaching, the United States seeks to present the testimony of
five  witnesses, who are named as victims in the indictment, at trial by video-conference or

1  similar technology. Sapse and Conti oppose the use of video-conference for witness testimony.

2      The five witnesses live in various cities across the east coast and are unable to travel to

3  Las Vegas for the trial due to the advanced stages of their degenerative illnesses and overall poor

4  physical conditions.

5      Witness "P.C" is 64 years old, and lives in Maryland. She has suffered from multiple

6  sclerosis since 1972 and is confined to a wheelchair. Her lags are permanently contracted and

7  she has lost significant strength in her arms.

8      Witness M.A. is 69 years old and lives in Florida. She was diagnosed with progressive

9  multiple sclerosis in 1990. She has lost the use of both legs and one arm. Her right arm is very

10  weak. She suffers from incontinence and requires assistance to move.

11      Witness J.B. is 45 years old and lives in Maryland. She has suffered from multiple

12  sclerosis since 1998 and has been in a wheelchair since 2003. She has no use of her legs and her

13  hands and arms are weak.

14      Witness J.G. is from New Jersey and is completely paralyzed. He cannot eat or breath

15  without assistance. His father, who is 74 years old and his primary care giver, would provide

16  testimony on his behalf.

17      Witness D.A. is 55 years old and lives in New York. She was diagnosed with multiple

18  sclerosis over thirty years ago. Her MS relapses and recurs and is exacerbated by air travel. Her

19  neurologist prohibits her from flying.

20      None of the five witnesses can travel, but all are willing to testify via video-conference

21  technology.

22                          **DISCUSSION**

23  I.      **Whether the use of video conference testimony at trial violates the Confrontation**

24          **Clause**

25      The Sixth Amendment gives a criminal defendant the right "to be confronted with the

26  witnesses against him." USCA CONST Amend. VI-Jury Trials. The Confrontation Clause,

27  "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of

28  fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, (1988). This right to a physical face-to-face meeting,

1    however, is not absolute.  *Maryland v. Craig*, 497 U.S. 836, 848 (1990); see Baker v. Morris,

2    761 F.2d 1396 (9th Cir. 1985) (noting that the Confrontation Clause should be given "a pragmatic

3    rather than rigid, literal construction.").  "[A] defendant's right to confront accusatory witnesses

4    may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such

5    confrontation is necessary to further an important public policy and only where the reliability of

6    the testimony is otherwise assured." *Craig*, 497 U.S. at 850.

7           For instance, when a party wishes to use two-way video conference testimony at trial

8    instead of have physical, face-to-face confrontation at trial, the court must find: (1) that the denial

9    of physical, face-to-face confrontation at trial is necessary to further an important public policy

10   and (2) that the reliability of the testimony is otherwise assured. See *Craig*, 497 U.S. at 850

11   (applying the two part analysis to one-way video testimony); see also *United States v. Yates*, 438

12   F.3d 1307, 1313 (11th Cir. 2006) (finding that the Sixth, Eighth, Ninth, Tenth, and Eleventh

13   Circuits have applied the *Craig* rule to test the admissibility of two-way video testimony at

14   trial.); see, e.g.,  *United States v. Turning Bear*, 357 F.3d 730, 737 (8th Cir.2004); *United States*

15   *v. Moses*, 137 F.3d 894, 897-98 (6th Cir.1998); *United States v. Weekley*, 130 F.3d 747 (6th

16   Cir.1997); *United States v. Rouse*, 111 F.3d 561, 568 (8th Cir.1997); *United States v. Quintero*,

17   21 F.3d 885, 892 (9th Cir.1994); *United States v. Carrier*, 9 F.3d 867 (10th Cir.1993); *United*

18   *States v. Garcia*, 7 F.3d 885, 887-88 (9th Cir.1993); *United States v. Farley*, 992 F.2d 1122,

19   1125 (10th Cir.1993).

20          1.    <u>Whether denial of physical, face-to-face confrontation at trial is necessary to</u>
             <u>further an important public policy.</u>

21

22          In this case, the government argues that the advanced stages of illness suffered by the five

23   witnesses makes the use of video-conference technology necessary.  The government also points

24   to the time and expense that would be incurred by the government if such technology is not

25   allowed.  In opposition, the Defendants argue that there is no important public policy justifying

26   the denial of a face-to-face confrontation at trial because (a) time and money are not sufficient

27   public policy interests, (b) a Rule 15 deposition must be attempted prior to considering the

28   constitutionality of video-conference, and (c) the government has not attempted to secure the

3

1   appearance of the five witnesses at trial.[1]

2                a.      *Public Policy*

3          The government asserts that there is an important public policy concern because allowing

4   video conference testimony will save both time and money.  The Defendants contend that these

5   are not important public policy concerns, citing to *United States v. Yates*. See *United States v.*

6   *Yates*, 438 F.3d 1307 (11th Cir. 2006).  In *Yates*, the Eleventh Circuit found that there was no

7   important public policy concern when the asserted concern made the case no different from "any

8   other criminal prosecution in which the Government would find it convenient to present

9   testimony by two-way video conference." *Yates*, 438 F.3d at 1310.  Time and money are

10  concerns in every case.  Thus, this case is no different from any other criminal prosecution and

11  there is no important public policy at issue.

12               b.      *Rule 15*

13         Defendant Sapse, again relying on *Yates*, argues that video-conference testimony at trial

14  is also not appropriate because the government should instead take Rule 15 depositions of the

15  five witnesses and use the depositions as testimony at trial.

16         Under Rule 15, in exceptional circumstances the court may grant a party permission to

17  conduct a Rule 15 deposition in order to preserve testimony for trial.  Fed. R.Crim. P. 15.  In

18  *Yates*, the court held that a Rule 15 deposition could have been conducted, instead of using

19  video-conference testimony at trial, when the witnesses who resided outside the subpoena power

20  of the court in Australia, were unwilling to travel to the United States for trial. *Yates*, 438 F.3d at

21  1310.  The court held that under the circumstances of that case, which included the availability of

22  a Rule 15 deposition, video-conference testimony at trial was improper. *Yates*, 438 F.3d at 1316.

23         Here, for the same reasons as in *Yates*, video -conference testimony is not proper. *Id.* The

24  witnesses are outside the subpoena power of the court and they cannot attend the trial.  A Rule 15

25  deposition is available.  Further, once the government learned the five witnesses could not travel,

26

27          ─────────────────

28         [1]Defendant Sapse also questions whether *Craig* is good law and whether it should be
    applied in this case.  The Court finds in the affirmative on both issues.

1   the proper step would have been to secure Rule 15 depositions.  The purpose of Rule 15 is to

2   preserve or gather testimony that is otherwise not available for trial.  Fed. R.Crim. P. 15.

3   Accordingly, the Defendants are correct, and prohibiting video-conference  testimony is

4   additionally appropriate because Rule 15 depositions are a viable option.

5                      *c.  Attempt to have witnesses appear at trial*

6         Defendant Conti argues that there is no public policy which justifies a denial of a physical

7   face-to-face confrontation at trial because the five witnesses may be able to appear at trial and the

8   government has not made a good faith effort to secure the witnesses' attendance at trial.

9   According to Conti, the government has offered no information "whatsoever indicating that it has

10   taken any measures to actually try to get the witnesses to court."  This is inaccurate. The

11   government has indicated that it reached out to all its anticipated witnesses for the purpose of

12   serving them with trial subpoenas and to determine their availability for trial.  While most of the

13   government's witnesses can travel to Las Vegas for trial, the five witnesses suffer from varying

14   states of debilitation and are unable to travel.  The five witnesses' conditions range from being

15   able to slightly move one arm to being completely paralyzed and needing assistance to breath.

16   The witness in the best physical condition has multiple sclerosis, needs assistance to walk, her

17   condition is exasperated by air travel, and her doctor has specifically prohibited her from flying.

18   These are extreme physical impairments and the government does not have to attempt to

19   physically move the witnesses to Las Vegas to prove that doing so would be impossible.

20   Accordingly, the Court finds that all five witnesses are unable to travel and thus, unable to

21   physically appear at trial.

22         2.   <u>Whether the reliability of the testimony can otherwise be assured.</u>

23         The Confrontation Clause serves several important purposes.  It: (1) ensures that

24   witnesses will testify under oath; (2) forces witnesses to undergo cross-examination; and (3)

25   permits the jury to observe the demeanor of the witness. *Craig*, 497 U.S. at 845-46.   In order to

26   satisfy the Confrontation Clause, the three elements of confrontation must be met: the oath,

27   cross-examination, and observation of the witness's demeanor.  *Id*. The first and second elements

28   are not disputed.

5

1  The government has suggested the following procedures to ensure that the Confrontation
2  clause is met:

3  •  The Five Witnesses will testify from the US District Court closest to their homes;[2]

4  •  The Five Witnesses will take the oath administered by the Court's Courtroom
5  Clerk in Las Vegas, thus making them subject to the penalty of perjury;

6  •  During their testimony, each witness could observe and hear the Defendants and
7  defense counsel;

8  •  During each witnesses' testimony, the Defendants could observe him/her.  The
9  witness would be alerted that the defendants could observe him/her;

10  •  The jury could observe the demeanor of the witness during direct and cross
11  examination; and

12  •  Defense counsel could have a full and fair opportunity to cross examine the
13  witnesses.  Copies of exhibits would be provided to each witness shortly in
14  advance of their testimony.

15  Defendant Conti objects to this proposed procedure.  He asserts that first, there will be an
16  "inevitable lag" in the video, and second, the government will influence the testimony of the
17  witnesses before the video starts.

18  The Court acknowledges that possible audio and visual problems can develop with
19  satellite transmission.  Additionally, the safeguards suggested by the government do not address
20  the fact that the jury and the Court will not be able to see all persons in the room with the
21  witness.  This is important because when a witness gives live testimony at trial, the jury can see
22  all persons in the room and how those persons do or do not affect the witness.  If video
23  conference technology is used, the jury will not be able to tell whether a witness is being coached
24  or coerced or in some other way influenced by persons in the room.  Thus, the inevitable blind
25  spot that occurs from video-conference makes live video-conference testimony less reliable.

26

27  [2]These locations were chosen because the Court's media systems are only able to connect
28  to other courts.

6

1    Additionally, the only way to address this concern is to place the witnesses in rooms by

2    themselves during their testimony.  However, in this case, forcing the witnesses to be alone,

3    considering their severe medical conditions, is not a reasonable option.  Almost all of the

4    witnesses require constant assistance.  Such assistance would be particularly important in the

5    instance of a medical emergency.  Further, if there was an issue with the audio or visual

6    technology, someone would need to be on hand to address the issue. Thus, it is not a viable

7    option to seclude the witnesses during their testimony.  Accordingly, the reliability of live video-

8    conference testimony at trial cannot be assured.

9    **II.      Whether the testimony of the five (5) witnesses is cumulative evidence**

10    Defendant Conti argues that the Five Witnesses' testimony should be excluded because it

11    is cumulative.  According to Conti there is nothing that distinguished the five witnesses from the

12    other witnesses.  Based on the information before the Court, the Court agrees. Although each of

13    the five witnesses is listed as a victim in the indictment, the government has not explained how

14    this makes their testimony necessary in addition to the witnesses already testifying.  The Court

15    has broad discretion to limit cumulative evidence.  *Geders v. United States*, 425 U.S. 80, 86-87

16    (1976).  Accordingly, the Court finds that the testimony of the five witnesses is cumulative. .

17

18    **CONCLUSION**

19    Based on the foregoing, and good cause appearing therefore,

20    IT IS HEREBY ORDERED that the Plaintiff's Motion to Obtain Video-Conference

21    Testimony from Witnesses (#94) is **DENIED.**

22

23    DATED this 22nd  day of October, 2012.

24

25

26    ROBERT J. JOHNSTON
      United States Magistrate Judge

27

28

7