# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALFRED T. SAPSE, *et al*.,<br><br>    Defendants. | Case No. 2:10-CR-00370-KJD-RJJ<br><br>**ORDER** |

Before the Court for consideration is the Order (#144) of Magistrate Judge Robert J. Johnston entered October 22, 2012, denying Plaintiff's Motion to Obtain Video Conference Testimony (#94). Appeal (#145) of the Magistrate Judge's Order was filed by Plaintiff pursuant to Local Rule IB 3-1 of the Local Rules of Practice of the United States District Court of the District of Nevada. Defendant Ralph M. Conti filed a response in opposition (#148) to the appeal.

The Court has conducted a *de novo* review of the record in this case in accordance with 28 U.S.C. § 636(b)(1)(A) and LR IB 3-1.  The Court determines that the Order (#144) of the United States Magistrate Judge entered October 22, 2012, is clearly erroneous and contrary to law and should be **REVERSED**.

I. Background

Essentially, the United States seeks to present the testimony of six witnesses[1] whose extremely poor physical condition make them unavailable to testify if they have to travel to the United States District Court for the District of Nevada, located in Las Vegas, Nevada. Each is severely disabled to the point that at least four of the six have lost the use of their legs, many are incontinent, several require the aid of permanent caregivers and cannot perform the most basic functions of life without assistance. However, each of the six would be able to complete much shorter and less physically taxing trips to United States District Courts close to their homes. From those District Courts, they could testify via live video conference technology.

The United States has proposed the following procedures:

> (1) the witness would testify from the United States District Court closest to their home; (2) the witness would take an oath administered by the Court's Courtroom Clerk in Las Vegas; (3) during their testimony, the witness could observe and hear the defendants and defense counsel; (4) during the witness' testimony, the defendants could observe him/her. The witness would be alerted that the defendants could observe him/her; (5) the jury could observe the demeanor of the witness during direct and cross examination; and (6) defense counsel would have a full and fair opportunity to cross examine the victims. Copies of exhibits would be provided to each witness shortly in advance of their testimony.

The magistrate judge denied the motion for the following reasons: 1) there was no important public policy concern that would be furthered by denial of physical, in-the-same-room, face-to-face confrontation at trial; 2) Rule 15 depositions are available and should have been utilized earlier; and 3) reliability of the testimony could not be guaranteed because there would be no way to ensure what was happening off screen that could influence the testimony of the witness. The United States has now appealed the magistrate judge's order and the Court finds that the magistrate judge's determinations were clearly erroneous and contrary to law.

---

[1] When the motion was initially filed the United States sought to include the testimony of five witnesses. The United States now seeks to include a sixth witness whose doctor has advised her not to travel due to health concerns.

2

## II. Analysis

In <u>Maryland v. Craig</u>, 497 U.S. 836 (1990), the Supreme Court approved a Maryland statute that permitted victims in child sex abuse cases to testify in a separate room where they could not see the defendant, but the defendant could see them on a one-way video monitor. <u>Id.</u> at 851. The Court stated that "the Confrontation Clause reflects a preference for face-to-face confrontation," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." <u>Id.</u> at 849. The Court held that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial where denial of such confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured. <u>Id.</u> at 850.

The procedures proposed in the present case surpass those approved in <u>Craig</u>. First, the video connection in the instant case would be two-way, so the witness can see the Defendant, in addition to the Defendant seeing the witness. Second, dramatic improvements in technology since <u>Craig</u>, decided twenty-two years ago, including clearer video and audio, improve the jury's ability to observe the demeanor and body language of the witness. Third, the Court will allow Defendants to have a representative on-site, in the room where the witness testifies from. While the witness in *Craig* was in a different room, not a different judicial district, the arrangements proposed in this Court—including personal video monitors for each juror—make the experience close to that of watching a live witness testify in person.

Next, an important public policy reason does make it necessary to conduct the testimony of these witnesses by video conference, rather than requiring the witnesses to travel to the District of Nevada in order to sit face-to-face, in the same room as Defendants. The primary public policy interest at issue in this case is allowing the government to pursue wire and mail fraud cases where the victims are infirm due to age or disability, and especially, as in this case, where they were targeted for those reasons. Allowing crimes to go unchallenged because the victims are physically unable to travel to and enter the courthouse undermines significant public interests. In the context of the

allegations in this case, the public policy favoring prosecution of wire and mail fraud crimes is heightened because the alleged victims were targeted because of their poor health.  This public policy is sufficiently important to justify permitting live video testimony.  Video testimony may overcome the requirement of physical confrontation only when it is "necessary to further an important public policy."  497 U.S. at 850.  That policy must be "more than the Government's convenience," and the Confrontation Clause "requires something more than mere unavailability" to justify introducing video testimony. See United States v. Yates, 438 F.3d 1307, 1316-17 (11th Cir. 2006)(en banc).  Here, the Government has clearly shown, contrary to the magistrate judge's conclusion, that important public policy justifies the video conference testimony.  Though the United States cited convenience and expense as factors favoring live testimony during the trial, as opposed to obtaining Rule 15 taped deposition testimony, the facts clearly show that the proposed witnesses are unavailable due to their extreme, not day-to-day or ordinary, health problems.  It is not mere convenience driving the need for live video testimony.  Therefore, the United States has met its burden in demonstrating that public policy, under the facts here, overrides Defendants' right to have these six witnesses testify in Defendants' immediate physical presence.

However, live video testimony is also appropriate here because other factors "adequately ensure[ ] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." Craig, 497 U.S. at 851.  In Craig, the Court found it significant that Maryland's procedure preserved "all other elements of the confrontation right," including requiring the witness to be competent, to testify under oath, to undergo contemporaneous cross examination, and for the judge, jury and defendant to view the demeanor and body, "albeit by video monitor," of the witness as he or she testifies. Id. Those same factors exist in the present case. Defendants attorneys' may cross-examine Defendants.  Witnesses will take an oath, and the jury will be able to observe the witnesses demeanor, movements, and their body language as they are examined by both advocates. As in Craig, witnesses will "give [their]

statements under oath—thus impressing [them] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." Id. at 845–56.

To the extent that the magistrate judge or Defendants suggest that video taped Rule 15 depositions are more reliable or appropriate under the Constitution, the Court disagrees. First, the Court cannot find that the United States has delayed in seeking Rule 15 depositions. In fact, it is the court's delay in resolving the original motion to obtain video-conference testimony from witnesses that pushed the issue to the eve of trial. Further, this conclusion is buttressed by the fact that the United States sought, and actually did, obtain Rule 15 deposition testimony from a custodian of records located in the Ukraine. Finally, the Court finds that under the procedures outlined, the live video conference testimony during trial is superior to video taped deposition Rule 15 deposition testimony, because the jury can view live the witnesses reactions to questions and answers while simultaneously viewing Defendants' demeanor during the live exchange. There is no certainty that Rule 15 depositions will provide more reliability than live video conference testimony.

Next, Defendants' arguments or inferences that Crawford v. Washington overruled Craig invites the Court to assume too much. While the Supreme Court may revisit Craig, this Court is bound to follow directly applicable Supreme Court precedent until it is clearly overruled. Defendant cites no case stating that Crawford overrules Craig.

A close reading of Crawford reveals that the opportunity for rigorous cross-examination, rather than mere physical presence of the defendant, is the central tenet of the confrontation right. 541 U.S. at 51(endorsing the prior opportunity for cross-examination hearsay exception). As Crawford explained, "[t]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." Id. at 50. The Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id. at 61. Providing live, video conference testimony of otherwise unavailable witnesses ensures that their testimony will be clearly tested by cross-examination. Therefore,

Crawford does not directly oppose the result here.  Therefore, the Court reverses the order denying the Government's motion to obtain video conference testimony.

Finally, the magistrate judge's determination that the five proposed witnesses were merely cumulative is clearly erroneous and contrary to law.  Separate counts in the indictment were brought based on Defendants actions with each proposed witness.  If the testimony of each witness was excluded because the witnesses could not testify, the United States has already admitted that it would have to voluntarily dismiss those counts as to each witness, because it would not have the evidence necessary to obtain a conviction.  Therefore, the testimony of the witnesses is the opposite of cumulative, it is essential and necessary to the counts in the indictment as they relate to each witness.

III.  Conclusion

Accordingly, IT IS THEREFORE ORDERED that the Magistrate Judge's Order (#144) entered October 22, 2012, is **REVERSED**, and Plaintiff's Motion to Obtain Video Conference Testimony (#94) is **GRANTED**.

DATED this 26th day of October 2012.

_____
Kent J. Dawson
United States District Judge